**Rachel E. Donn, Esq.**
**Nevada Bar No.:  10568**
**Peter E. Dunkley, Esq.**
**Nevada Bar No.: 11110**
**WOLFE & WYMAN LLP**
**980 Kelly Johnson Drive, Suite 140**
**Las Vegas, NV  89119**
**pedunkley@wolfewyman.com**
**Tel: (702) 476-0100**
**Fax: (702) 476-0101**

Attorneys for Defendants
**NATIONAL CITY MORTGAGE**
**COMPANY, MICHAEL DEMING, AND**
**VIVIAN FURLOW**

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| NICHOLAS OLIVA; JOAN OLIVA, individuals, | CASE NO.:  2:08-cv-01559 |
| Plaintiffs, | Nevada District Court Case No.:  A570250 |
| v. | **DEFENDANTS' MOTION FOR** |
| NATIONAL CITY MORTGAGE COMPANY; MICHAEL DEMING, individually and as an employee/agent of National City; VIVIAN FURLOW, individually and as an employee/agent of National City; and DOES I through XX, inclusive | **SUMMARY JUDGMENT**  **[Fed. R. Civ. P. 56]** |
| Defendants. | |

Pursuant to Fed. R. Civ. P. 56, Defendants, National City Mortgage Company; Michael Deming and Vivian Furlow (hereinafter collectively known as "Defendants"), by and through their attorneys, Wolfe & Wyman LLP, hereby move for summary judgment.

///

///

///

///

///

1
MOTION FOR SUMMARY JUDGMENT

This Motion is based upon the Memorandum of Points and Authorities filed and served concurrently, all exhibits annexed hereto, all pleadings and papers filed herein, and upon such oral and documentary evidence as may be presented at a hearing on this Motion that the Court may set.

DATED:    February 8, 2010                    WOLFE & WYMAN LLP


By:    /s/ Peter E. Dunkley
RACHEL E. DONN, ESQ.
Nevada Bar No. 10568
PETER E. DUNKLEY, ESQ.
980 Kelly Johnson Drive, Suite 140
Las Vegas, NV 89119
Phone (702) 476-0100
Fax (702) 476-0101
pedunkley@wolfewyman.com

Attorneys for Defendants
**NATIONAL CITY MORTGAGE COMPANY,
MICHAEL DEMING, AND VIVIAN
FURLOW**

\\wwlv\share\Matters\National City Bank (1264)\069 (Oliva)\Pleadings\Motion for Summary Judgment Federal Final.doc

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    ISSUES PRESENTED

A.    Whether the statute of limitations on Plaintiffs fraud claim should be tolled when it is undisputed that Plaintiffs exercised no diligence to discover the alleged fraud after having notice.

B.    Whether Plaintiffs have presented a prima facie fraud claim when they cannot establish justifiable reliance.

C.    Whether the statute of limitations on Plaintiffs negligence claim should be tolled when it is undisputed that Plaintiffs exercised no diligence to discover the alleged negligence after having notice.

D.    Whether Plaintiffs can present a *prima facie* negligence claim when, as a matter of law, a lender owes no duty of care to a borrower.

E.    Whether Plaintiffs can present a *prima facie* negligence claim when their claim is barred by the economic loss doctrine.

F.    Whether Plaintiffs are entitled to punitive damages when they are not entitled to compensatory damages.

### II.    SUMMARY OF UNDISPUTED FACTS

A.    **On May 9, 2005, Plaintiffs Executed Initial Documents and Applied for a Three-Year Adjustable Rate Mortgage.**

In May of 2005, Nicholas and Joan Oliva ("Plaintiffs"), sought to obtain a $680,000.00 loan ("Subject Loan") to purchase real property.  (First Amended Complaint (Docket No. 20), hereafter "FAC", p. 2:1-3.)  In May of 2005, Plaintiff Joan Oliva was a licensed real estate agent and represented the Plaintiffs in this transaction.  (FAC ¶9; Deposition of Joan Oliva, p. 57:2-5, relevant portions attached hereto as Exhibit "A".)  Plaintiffs had collectively made no less than 14 prior real estate purchases.  (Id., at p. 29:6-12; Deposition of Nicholas Oliva, p. 19:12 through p. 20:20, relevant portions attached hereto as Exhibit "B".)

To obtain financing, Plaintiffs contacted Defendants and on or about May 9, 2005, ("Initial Application Date"). Michael Deming and Vivian Furlow were employees of National City Mortgage

Corporation.  (FAC ¶ 6.)  On the Initial Application Date, Plaintiffs executed multiple documents that indicated that the Subject Loan for which they were applying was a 3-year adjustable rate mortgage (hereafter "ARM"). (Joan Oliva' response to Interrogatory 3, p.6:10-19, attached hereto as Exhibit "C"; Nicholas Oliva's response to Interrogatory 3, p. 6:10-19, attached hereto as Exhibit "D" and hereafter collectively referred to as "Plaintiffs' Interrogatory Responses".) [1]

The documents Plaintiffs executed on May 9, 2005 include, but are not limited to, a preliminary Truth in Lending Disclosure Statement (Bates NCM000539, attached hereto as Exhibit "E"), a Mortgage Loan Commitment document (Bates NCMC000076-77, attached hereto as Exhibit "F"); and an Adjustable Rate Mortgage Program Disclosure, (Bates NCMC000107, attached hereto as Exhibit "G"), which each clearly indicate the loan Plaintiffs would receive was a three-year ARM.

**B.**     **On May 26, 2005, Plaintiffs Executed Final Documents and Confirmed The Terms of a Three-Year Adjustable Rate Mortgage.**

On May 26, 2005, ("Final Closing Date") over two weeks after the Initial Application Date, Plaintiffs signed the final loan documents.  They executed an Adjustable Rate Note ("Note") secured by a Deed of Trust ("Deed")  with an Adjustable Rate Rider, ("Deed") which encumbered real property located at 118 Crestview Way, Las Vegas, NV 89124 ("Subject Property")(FAC ¶12).  True copies of the Note and Deed are annexed hereto as Exhibits "H" and "I" respectively.  The Deed was thereafter recorded and copies of the loan documents, including the Note and Deed of Trust, were provided to Plaintiffs on or about May 31, 2005. (Letter from Nevada Title Company, Bates stamped NCM000456, attached hereto as Exhibit "J".)  Plaintiffs obtained a $680,000.00 loan used the proceeds to purchase the Subject Property.  (FAC ¶12.)

On the Initial Application Date and the Final Closing Date, Plaintiffs signed or initialed documents no less than 58 times.   Each of the documents that include the terms of the Subject Loan indicated that the Subject Loan is a 3-year ARM.  Plaintiffs have not produced a single document that indicates their alleged desire to obtain a loan with terms different than those of the Subject Loan.

///

---

[1] The content and pagination of Plaintiffs Interrogatory Responses, Exhibits A and B are nearly identical, thus the page and line references are virtually the same.

MOTION FOR SUMMARY JUDGMENT

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

**C.      On August 22, 2008, Plaintiffs Filed Their Complaint.**

On August 22, 2008, more than three years after the Final Closing Date, Plaintiffs filed this lawsuit alleging, among other things, fraud and negligence.  Plaintiffs allege that they signed or initialed their loan documents, more than 58 times, because of alleged misrepresentations by Defendants, despite their "anger" and feeling as if they were "under duress" (FAC ¶22).   Between the Final Closing Date in May of 2005 and the time Plaintiffs were notified that Subject Loan's interest rate would adjust in July of 2008, Plaintiffs did nothing to follow-up regarding the terms of the Subject Loan.  (Plaintiffs' Interrogatory Responses, p. 12:16-17.)  For the reasons that follow, Defendants are entitled to summary judgment in their favor.

### III.      PROCEDURAL POSTURE

The Plaintiffs filed a Complaint on August 22, 2008.  The Complaint named the above-referenced Defendants and alleges several causes of action, namely:  (1)  Fraud, (2) Breach of Contract, (3) Conversion, (4) Breach of Covenant of Good Faith and Fair Dealing, (5) Negligence, Gross Negligence and Negligence *per se*, (6) Quiet Title, and (7) Violation of 15 U.S.C. § 1601, *et seq.* (TILA).

On February 13, 2009, the Court issued an Order (Docket No. 19) granting Defendants' Motion to Dismiss (Docket No. 4).  That Order read, "Defendants' Motion to Dismiss Plaintiffs' Complaint (Doc. #4) is GRANTED, provided that Plaintiffs' Claims for Fraud and Negligence are hereby dismissed without prejudice." *See*, Order (Docket No. 19) at p. 3:24-26.  Plaintiffs filed their First Amended Complaint on March 16, 2009 (Docket No. 20) alleging the same seven causes of action as in the initial Complaint.  On March 26, Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint (Docket No. 21).   On May 26, 2009, the Court heard arguments on that Motion and issued an Order dismissing all of Plaintiffs' claims except fraud and negligence (Docket No. 25).  Discovery has commenced and is now closed.[2]

///

///

---

[2] By stipulation of the parties, Plaintiffs have until February 12, 2010 to conduct the depositions of Defendants Vivian Furlow and Michael Deming (Docket No. 40); also pending before the Court is Defendants' Motion to Strike Plaintiffs' Expert (Docket No. 37).

3

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

## IV.    STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment.  Rule 56 states:

> A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim.

Fed. R. Civ. Pro. 56(b).  The rule further states:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Summary judgment is properly granted when "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A material fact is one that, "under the governing substantive law ... could affect the outcome of the case." Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  One purpose of a summary judgment is to "isolate and dispose of factually unsupported claims." Celotex Corp., 277 U.S. at 323-324.  A nonmoving party cannot avoid summary judgment by relying only on conclusory allegations unsupported by factual data. See, Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  The nonmoving party must set forth specific facts supported by competent evidence that shows a genuine issue for trial. See, Fed. R. Civ. P. 56(e); see also, Celotex Corp., 477 U.S. at 324.

For the following reasons, Defendants are entitled to summary judgment in their favor.

## V.    ARGUMENT

Defendants are entitled to summary judgment in their favor because Plaintiffs cannot establish facts supported by competent evidence necessary to sustain their fraud and negligence claims.  Consequently, Plaintiffs are not entitled to punitive damages.

### A.    FRAUD

Plaintiffs' fraud claim fails because: (1) their claim is time barred, and (2) they cannot prove

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

a *prima facie* cause of action for fraud.

### 1.   Plaintiffs' Fraud Claim Is Time-Barred

Plaintiffs' fraud claim fails as a matter of law because the complaint was filed after the statute of limitations had expired.  The Statute of Limitations to bring a cause of action for fraud is three years. Nev. Rev. Stat. § 11.190(3)(d).  Plaintiffs allege that the fraud occurred on or about May 26, 2005.  (FAC ¶ 27; Plaintiffs' Interrogatory Responses, p. 6:3-6).   The Statute of Limitations on the alleged fraud claim therefore expired on May 26, 2008.

Plaintiffs filed their complaint on August 22, 2008, which is more than three years after the date of the alleged fraud.  Therefore, Plaintiffs' fraud claim is time barred and Defendants are entitled to Summary Judgment in their favor.  Stalk v. Mushkin, 199 P.3d 838, 844 (Nev. 2009)(affirming district court's order granting summary judgment on claims that were time-barred).

### a.   Plaintiffs are Not Entitled to Equitable Tolling.

Plaintiffs are not entitled to equitable tolling of the statute of limitations because it is undisputed that they performed no diligence as required to invoke the doctrine of equitable tolling. Equitable tolling is available only in "extreme cases" and is applied sparingly, such as in instances where the defendant has tricked the plaintiff into allowing the deadline to expire. Scholar v. Pacific Bell, 963 F.2d 264, 267-68 (9th Cir. 1992).  When uncontroverted evidence proves that Plaintiffs should have discovered the facts giving rise to a claim, discovery based tolling of the statute of limitations may be decided as a matter of law.  Nevada Power Co. v. Monsanto Co., 955 F.2d 1304, 1307 (9th Cir. 1992).

As the Nevada Power Court held:

> The Nevada Supreme Court, however, has interpreted this statute to mean not that an action in fraud accrues only when the plaintiff has *all* the facts needed to constitute a fraud claim, but rather that "the statute of limitation commence [s] to run from the date of the discovery of facts which in the exercise of proper diligence would have enabled the plaintiff to learn of the fraud." Howard v. Howard, 69 Nev. 12, 239 P.2d 584, 589 (1952). *Accord* Sierra Pacific Power Co. v. Nye, 80 Nev. 88, 389 P.2d 387, 390 (1964) ("mere ignorance of the existence of ... the facts which constitute the cause will not postpone the operation of the statute of limitations ... if the facts may be ascertained **by inquiry or diligence**").

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

5

Id. at 1306. (italics in original, **bold** emphasis added). As set forth below, Plaintiffs are not entitled to equitable tolling because they: (1) were not induced by Defendants to allow the statute of limitations to expire, (2) had notice, and (3) admit they performed no diligence.

### i.    Plaintiffs Were Neither Induced Nor Tricked by Defendants into Allowing the Statute of Limitations to Run.

Plaintiffs are not entitled to equitable tolling because they were not induced or tricked into allowing the statute of limitations to run.  In the mortgage banking context, equitable tolling does not apply in the absence of facts showing that the plaintiff "was induced or tricked by defendants' misconduct into allowing the filing deadline to pass, or [that the plaintiff] was unable to obtain vital information bearing on the existence of his…claim, despite all due diligence."  Rosal v. First Federal Bank of California, 2009 WL 2136777, *6 (N.D. Cal. 2009).  In Rosal, the court held that the plaintiff was not entitled to equitable tolling because plaintiff: (1) did not show any conduct on the part of defendant that prevented plaintiff from discovering the alleged violation, and (2) did not explain why he did not learn of the violations until the foreclosure.  Id.  The court found that nothing prevented the plaintiff from "comparing his loan documents" with the information that was required to state his claim.  Id.  Nor was the plaintiff tricked into allowing the deadline to pass.  Id.

The Rosal case is analogous to this matter.  Here, Plaintiffs have not claimed that Defendants did anything to prevent them from discovering the alleged fraud.  In fact, the opposite is true.  Plaintiffs received copies of the unaltered loan documents from the Nevada Title Company, *after* the alleged fraud. (Exhibit J, Letter from Nevada Title Company.)  Yet Plaintiffs did not review loan documents to ensure that the terms of the Subject Loan were as they alleged them to be.  (Plaintiffs' Interrogatory Responses, p. 12:16-17.)  Furthermore, Plaintiffs did nothing to learn of the alleged fraud and merely claim they did not learn of the terms of the Subject Loan until May of 2008, when Defendants informed them that the interest rate on the Subject Loan would adjust, pursuant to the express terms of the Note. (Id.)   Plaintiffs have no explanation for their failure to review the final and recorded documents.  Plaintiffs offer no excuse for not learning of the terms of the Subject Loan until three years after they signed loan documents expressly setting forth the loan terms.

Here, as in Rosal, because Plaintiffs' absence of any diligence was not caused by or

MOTION FOR SUMMARY JUDGMENT

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

frustrated by Defendants, and because Plaintiffs have no excuse for not learning of the alleged terms of the Subject Loan for which they signed, Plaintiffs are not entitled to the equitable tolling of their claims.

**ii.**      **Plaintiffs had Notice and Still Failed to Exercise Any Diligence.**

Plaintiffs are also not entitled to equitable tolling because they were on inquiry notice of the alleged fraud. "[A] plaintiff must use due diligence in determining the existence of a cause of action." Bemis v. Estate of Bemis, 114 Nev. 1021, 1025, 967 P.2d 437, 440 (Nev. 1998) (quoting, Sierra Pacific Power Co. v. Nye, 80 Nev. 88, 389 P.2d 387 (1964)). The diligence required on the Plaintiff's part depends on when the Plaintiff was placed on inquiry notice. Id.

> A plaintiff "need not ... have fully discovered the nature and extent of the fraud before [he is] on notice that something may have been amiss. Inquiry notice is triggered by evidence of the *possibility* of fraud, not full exposition of the scam itself. "

Theoharous v. Fong, 256 F.3d 1219, 1228 (11th Cir. 2001)(quoting Sterlin v. Biomune Sys., 154 F.3d 1191, 1203 (10th Cir.1998)). Plaintiffs had inquiry notice as demonstrated by the undisputed facts:

It is undisputed that Plaintiff Joan Oliva was a licensed real estate agent at the time Plaintiffs acquired the Subject Loan, and therefore she would have generally familiarity with the requirements of obtaining financing and the loan closing process. (FAC 9.) Ms. Oliva testified that she received training in preparation to obtain a real estate license:

> Q:     Now, have you taken any special training beyond that, like real estate for example?
> A:     For my real estate license, yes.

 (Deposition of Joan Oliva, p. 13:9-11.)

It is undisputed that Plaintiffs believe that on May 9, 2005, the Initial Application Date, the loan documents they executed indicated that the Subject Loan was a 3-year ARM were incorrect, and that Vivian Furlow said she would change the documents. Plaintiffs testified:

> Upon review of the documents, [Plaintiffs] advised Furlow that it incorrectly indicated it was a three year ARM, not the seven year ARM to which all parties agreed. Furlow immediately responded,

7

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

> "Don't worry.  Even if you hadn't caught it, the examiner would
> have."

(Plaintiffs' Interrogatory Responses, p. 10:22-28.)

It is undisputed that Vivian Fulow did *not* change the documents on May 26, 2005, the Final

Closing Date.  Plaintiffs testified:

> The document once again erroneously indicated it was a three (3) year
> ARM and once again Plaintiffs loudly and unequivocally protested.

(Plaintiffs' Interrogatory Responses, p. 11:12-13.)

It is undisputed that Plaintiffs believe that, between May 9, 2005 and May 26, 2005, Vivian

Furlow lied to them when she said that the loan documents were ready at the title company.

Plaintiffs testified:

> There was also an instance when Nicholas Oliva spoke to Deming and told
> Deming that he was told by Furlow that the loan documents were at the
> Title Company, when in fact Lauren Plaisted informed him they were not.
> Nicholas Oliva called Deming to inform him that Furlow had stated
> falsehoods and fabrications.  Deming responded in a way the suggested he
> was covering for Furlow.  Deming's inappropriate and unprofessional
> response to Plaintiffs' concerns precipitated a very frosty relationship
> between Deming, Furlow and the Plaintiffs.

(Plaintiffs' Interrogatory Responses, p. 8:22-28.)

It is undisputed that Plaintiffs also believe that Michael Deming was "covering" for Vivian

Furlow when Nicholas Oliva confronted Michael Deming about Vivian Furlow's lie about the loan

documents being ready at the title company. (Id.) Plaintiffs further believe that Michael Deming was

and "in" on Vivian Furlow's lie. Nicholas Oliva testified:

> Q.      – was Deming in on the lie that at that point?
> A.      ...Yeah, was it a lie?  Absolutely was a lie…

(Nicholas Oliva Deposition, p. 96: 5-20.)

It is further undisputed that Plaintiffs, on the Final Closing Date, executed the final loan

documents despite Plaintiffs' beliefs that, they were victims of *three* lies by defendants: (1) the lie

told by the Vivian Furlow that the loan documents were ready, (2) the lie told by Michael Deming in

allegedly "covering" for Vivian Furlow's alleged lie, and (3) the lie that Vivian Furlow when she

told them that she would change the terms of the Subject Loan on the documents executed on May 9,

8

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

2005 which Plaintiffs confirmed when presented with unaltered loan documents on the Final Closing Date.  Plaintiffs testified:

> The document once again erroneously indicated it was a three (3) year ARM and once again Plaintiffs loudly and unequivocally protested. Nicholas immediately called Ms. Gail Ranc by instruction of the paperwork given to him by National City Mortgage.  Ms. Ranc immediately transferred the call to Defendant Furlow who said to him, "I told you I was going to take care of it.  Don't worry.  You have a seven-year ARM.  Just sign the closing papers and don't hold up settlement and congratulations."  Due to the time constraint and duress, and because of the trust he had for Deming and Furlow, Plaintiffs signed the document.

(Plaintiffs' Interrogatory Responses, p. 11:12-20.)

It is undisputed that Title Officer stated that Plaintiffs would need new documents drawn up.

> Q.    [The Title Officer said] "the only thing [Plaintiffs] could do was to call the lender's agent and get new papers drawn up, or we couldn't go on with settlement"?
> A.    That's what [the Title Officer] said; that's correct.

(Deposition of Nicholas Oliva, p. 61:1-4.)

It is further undisputed that, on May 26, 2005, despite all of the above undisputed facts, Plaintiffs, for the second time, signed voluminous loan documents which clearly indicated that the Subject Loan is a 3-year ARM.  (Exhibits H and I.)  Plaintiffs testified:

> Due to the time constraint and duress, and because of the trust he had for Deming and Furlow, Plaintiffs signed the document.

(Plaintiffs' Interrogatory Responses, p. 11:17-20.)

It is also undisputed that Plaintiffs claim to have signed the documents under "duress."  (Id., at p. 11:17-18.)

It cannot be disputed that Nevada Title Company mailed Plaintiffs copies of executed and final loan documents.  (Exhibit J.)

Thus, in addition to receiving *actual* notice by receiving copies of the loan documents, including the Deed and Note from Nevada Title Company, Plaintiffs were on inquiry notice because they believe that: (1) Vivian Furlow and Michael Deming lied three times, *before* Plaintiffs executed the final closing documents on May 26, 2005, and (2) Plaintiffs signed the documents under

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

MOTION FOR SUMMARY JUDGMENT

"duress", and (3) the Escrow Agent advised them that the documents would have to be redrawn for them to receive loan terms other than the 3-year ARM.  Facts such as these put Plaintiffs on notice of the alleged fraud.

Based on the above, Plaintiffs were, at a minimum, on inquiry notice because Plaintiffs had "knowledge of facts that would lead a reasonable person to begin investigating…" Theoharous, 256 F.3d, at1228.  However, despite having inquiry notice, as stated above, it is undisputed that Plaintiffs did no follow-up.  (Plaintiffs' Interrogatory Responses, p. 12:16.)

Thus, Plaintiffs' fraud claim is time-barred because such knowledge of facts followed by the complete absence of any diligence on their part precludes the Plaintiffs from invoking the Discovery Rule.  Accordingly, Defendants fraud claim is time-barred.

### iii.        Plaintiffs Exercised No Diligence

The "discovery rule" only tolls the statute of limitations "until the injured party discovers or reasonably *should have discovered* facts supporting a cause of action." Siragusa v. Brown, 114 Nev. 1384, 1392 (1998) (emphasis added).  Additionally,

> [T]he discovery rule carries with it the requirement that the plaintiff exercise reasonable diligence ... Plaintiffs may not close their eyes to means of information reasonably accessible to them and must in good faith apply their attention to those particulars within their reach.

Id. at 1394, (emphasis added, quoting Spitler v. Dean, 436 N.W.2d 308, 310 (Wis. 1989)).

Equitable tolling of a statute of limitations may apply if "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th Cir. 2000).   Furthermore:

> Under the discovery rule, the plaintiff bears the burden of proving " '(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.' " Grisham, 40 Cal.4th at 638, 54 Cal.Rptr.3d 735, 151 P.3d 1151 (quoting Fox, 35 Cal.4th at 808) (discussing burden in pleading context, which is equally applicable to summary judgment context if the substantive evidentiary burden is modified appropriately).

Grisham v. Phillip Morris, Inc., 2009 WL 4019366 (C.D. Cal 2009).  Thus, Plaintiffs bear the burden to show how, *despite their diligence*, they were unable to discover the alleged fraud.  Id.

In this case, there is no genuine issue of material fact as to Plaintiffs' diligence because

10

Plaintiffs admit they did nothing that could qualify as diligence. Plaintiffs testified as follows:

> Q.      Please state in detail all efforts taken by you after May 26, 2005 to
>         ensure that Defendants did in fact alter the documents as allegedly
>         promised in paragraph 21 of the FAC.
> A.      "…Plaintiffs did not follow up with the modification of the
>         documents…"

(Plaintiffs' Interrogatory Responses, p. 12:16.)

Furthermore, it is undisputed that Plaintiffs had a "means of information reasonably accessible to them" as stated in <u>Siragusa</u>, because Nevada Title Company provided Plaintiffs with copies of the loan documents.  (Exhibit J.)  Therefore, Plaintiffs are not entitled to rely on the equitable tolling of the statute of limitations.  <u>Siragusa</u>, 114 Nev., at 1394.

As also noted above, Plaintiffs testified that Defendants Deming and Furlow lied to Plaintiffs *before* they signed the final loan documents which confirmed the terms of the Subject Loan.  It is undisputed that Plaintiffs did nothing after executing voluminous loan documents which they allege were incorrect, even after Nevada Title Company sent Plaintiffs copies of the final documents.

> Q.      Please state in detail all efforts taken by you after May 26, 2005 to
>         ensure that Defendants did in fact alter the documents as allegedly
>         promised in paragraph 21 of the FAC.
> A.      "…Plaintiffs did not follow up with the modification of the
>         documents…"

(Plaintiffs' Interrogatory Responses, p. 12:16.)

By doing absolutely nothing, Plaintiffs could not have exercised any diligence at all, let alone "reasonable" or "proper" diligence, and are not entitled to invoke the Discovery Rule to allege a fraud claim after the statute of limitations has run. Therefore, Defendants are not entitled to equitable tolling, and Plaintiffs' fraud claim is time-barred.

### 2.   <u>Plaintiffs Fail Prove Each Element of Fraud by Clear And Convincing Evidence.</u>

Defendants are entitled to summary judgment in their favor because Plaintiffs cannot prove each essential element of their fraud claim by clear and convincing evidence.  "Where an essential element of a claim for relief is absent, the facts, disputed or otherwise, as to other elements are rendered immaterial and summary judgment is proper." <u>Bulbman, Inc., v. Nevada Bell</u>, 825 P.2d

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

588, 592 (Nev. 1992).  See also, Sims v. General Telephone & Electric, 815 P.2d 151 (Nev. 1991).

A fraud claim requires that Plaintiffs show by clear and convincing evidence that: (1) Defendants made a false representation, (2) Defendants knew or believed the representation was false, (3) Defendants intended to induce Plaintiffs into acting in reliance of the misrepresentation, (4) Plaintiffs justifiably relied on the misrepresentation, and (5) Plaintiff suffered damages from so relying.  Lubbe v. Barba, 540 P.2d 115 (1975).

In this case, Plaintiffs have offered no clear and convincing evidence that their reliance on the alleged misrepresentation was justified.  Indeed, the undisputed facts, Plaintiffs' belief of Defendants' lies and execution of loan documents under alleged duress, show that any reliance by Plaintiffs is completely unjustified.

Any reliance is further unjustified because Plaintiffs were experienced in real estate transactions.  It is undisputed that Joan Oliva was a licensed real estate agent at the time of the transaction. (Deposition Joan Oliva, p. 13:18-22)  It is undisputed that Plaintiffs were further generally experienced in real estate transactions because they had collectively made no less than 14 prior real estate purchases.  (Id., at p. 29:6-12; Deposition of Nicholas Oliva, p. 19:12 through p. 20:20.)   In all their prior experience, either as a real estate agent or as purchasers of no less than 14 properties, Plaintiffs had never known loan documents to have been altered after they were executed.

Joan Oliva testified:

Q.    [W]hat you're saying is you signed all these loan documents.  Then they were supposed to be changed afterwards, after you signed them.
A.    Yes.
Q.    That's your testimony?
A.    Yes.
Q.    …since you were age 21 and buying properties, have you ever known that to happen in any other transaction, yours or anyone else?
A.    No…

(Deposition of Joan Oliva, p. 108:7-18.)  Nicholas Oliva likewise testified:

Q.    In all of your experience because you purchased property in New Jersey and property in Nevada, are you aware of any instances where the terms of a promissory note were changed after you executed the note?
…
A.    I have never had a problem with any loan in the past where I would even have addressed any such scenario.

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

(Deposition of Nicholas Oliva, p. 107:24 through p. 108:8.)

As discussed above, it is undisputed that Plaintiffs believed that Ms. Furlow and Mr. Deming had lied to them three times prior to Plaintiffs execution of the final loan documents on the Final Closing Date.  (Plaintiffs Interrogatory Responses, p. 11:12-20; Deposition of Nicholas Oliva, p. 96: 5-20.)  It is undisputed that Nevada Title Company mailed copies of the documents to Plaintiffs, each of which indicate that the Subject Loan was a 3-year ARM, and the documents were unaltered.  (Exhibit J.) Plaintiffs believed that Defendants had told no less than three prior lies regarding the acquisition of the Subject Loan. (Plaintiffs' Responses to Interrogatories, p. 11:12-20; Deposition of Nicholas Oliva, p. 96: 5-20.)   Having such prior experience in real estate, and when confronted with actual knowledge of the alleged lies, any reliance, alleged by Plaintiffs to be justified, rings hollow.

Plaintiffs have not proven by clear and convincing evidence that their reliance was justified. Lubbe, 540 P.2d at118.  Plaintiffs' factual allegations regarding their alleged justified reliance are unsupported by competent evidence and therefore insufficient to withstand a motion for summary judgment. Celotex Corp., 477 U.S. at 324.  Plaintiffs have not established a *prima facie* fraud claim. Therefore, summary judgment in favor of Defendants is appropriate.

### B.    NEGLIGENCE

Similarly, Plaintiffs' negligence claim fails because it is time-barred and because plaintiffs cannot prove a *prima facie* case.

#### 1.    Plaintiffs' Negligence Claim is Time Barred; Plaintiffs' Performed No Diligence and are Not Entitled to Equitable Tolling.

The Statute of Limitations to bring a cause of action for negligence is two years. Nev. Rev. Stat. § 11.190(4)(e).  As stated above, Plaintiffs allege that the negligence occurred on or about May 26, 2005.  (Complaint ¶ 27, 59.)  Plaintiffs filed their complaint on August 22, 2008, which is more than one year after the statute of limitations on negligence had run.  Furthermore, as discussed in detail in Section A of this Motion, Plaintiffs are not entitled to any tolling of the statute of limitations because, despite actual or inquiry notice, they exercised no diligence.   Therefore, Plaintiffs' negligence claim is time barred.

13

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

**2.    Plaintiffs Cannot Prove Each and Every Element of their Negligence Claim.**

Plaintiffs' negligence claim also fails as a matter of law because Plaintiffs cannot establish that each and every Defendant independently: (1) owed a duty of care to Plaintiffs; (2) breached that duty; (3) the breach was the proximate and actual cause of Plaintiffs injuries; and (4) Plaintiffs suffered damage.  Scialabba v. Brandise Construction Co., 112 Nev. 965, 968 (1996).  Here, Plaintiffs cannot establish any element necessary to prove a negligence claim.

**a.    Defendants Owe No Duty of Care To Plaintiffs.**

Plaintiffs' negligence claim fails because Defendants owed Plaintiffs no duty of care as a matter of law.  Whether Defendants owe Plaintiff a duty of care is a question of law.  Scialabba v. Brandise Construction Co., 921 P.2d 928, 931 (Nev. 1996).  See also, Lee v. GNLV Corp., 22 P.3d 209 (Nev. 2001)(when Plaintiff, as a matter of law cannot recover, summary judgment is appropriate).   Furthermore, Liability based on negligence does not exist absent a breach of duty. Bradshaw v. Blystone Equipment Co. of Nev., 79 Nev. 441, 444 (1963).  It is well established that a lender generally owes no duty of care to a borrower.  See, Yerington Ford, Inc. v. General Motors Acceptance Corp., 359 F.Supp.2d 1075, 1092 (D. Nev. 2004)(overruled on other grounds by, Giles v. General Motors Acceptance Corp., 494 F.3d 865 (2007)).; see also, Nymark v. Heart Fed. Savs. & Loan, 231 Cal.App. 3d 1089, 1096 (1991).

Here, as a matter of law, Defendants as the lender owed no duty of care to Plaintiffs. Yerington Ford, Inc., 359 F.Supp.2d at 1092.  As such, Plaintiffs cannot prove the essential element of duty to support their negligence cause of action.  Therefore, Plaintiffs' negligence claim fails, and Defendants are entitled to summary judgment in their favor. See, Bulbman, Inc., 825 P.2d at 592; Celotex Corp., 477 U.S. at 324.

**b.    Plaintiffs Negligence Claim Fails Because Plaintiffs State That Defendants' Alleged Breach Was Intentional Conduct.**

Plaintiffs' negligence claim also fails because they allege that Defendants' breach of the alleged duty was the result of intentional conduct.  However, "Negligence is an *unintentional* tort, a failure to exercise the degree of care in a given situation that a reasonable man under similar circumstances would exercise to protect others from harm."  Rocky Mountain Produce Trucking Co.

14

MOTION FOR SUMMARY JUDGMENT

v. Johnson, 369 P.2d 198, 201 (Nev.1962) (quoting, Restatement of Torts, §§ 282, 283, 284; Prosser, Torts, § 30, et seq., emphasis added, internal quotes omitted).

Here, Plaintiffs testify of intentional conduct:

> Interrogatory 14:  Please state all facts that support your contention in paragraph 59 of the FAC that Defendants breached the alleged duty.
>
> Response to Interrogatory 14:  Defendants Deming and Furlow assured Plaintiffs on more than one occasion that they were selling them a seven (7) year ARM, *knowing however all the while that they were instead deceptively and insidiously intending* on selling Plaintiffs a three (3) year ARM…"

(Plaintiffs' Interrogatory Responses, p. 14:12-15 emphasis added.)

Plaintiffs' negligence claim is belied by their belief that Defendants' alleged breach of the alleged duty was intentional and therefore could not be negligence as a matter of law. Rocky Mountain Produce Trucking Co., 369 P.2d at 201.

### c.   **Plaintiffs Have Not Stated Sufficient Damages to Sustain Negligence.**

Plaintiffs are not entitled to damages because they allege no physical injury, their alleged emotional distress is insufficient to sustain damages, and the economic loss doctrine bars further recovery.

### i.   **No Physical Damages.**

Plaintiffs are not entitled to damages based on physical injuries because Plaintiffs testified that they suffered no physical injuries.  Joan Oliva testified as follows:

> Q.   Did you suffer any physical injuries at all related to this suit?
> A.   No, no physically.

(Deposition of Joan Oliva, p. 77:12-14.)  Nicholas Oliva testified similarly:

> Q.   …are you alleging any physical injuries as a result of this loan transaction?
> A.   Physical injuries?
> Q.   Physical injuries.
> A.   No.

(Deposition of Nicholas Oliva, p. 101:20-25.)  Accordingly, Plaintiffs are not entitled to seek damages for any physical injuries.

///

15

### ii.   Insufficient Emotional Damages.

Plaintiffs are not entitled to damages for alleged emotional distress because Plaintiffs alleged emotional distress is insufficient to sustain a claim for damages.  "[I]n cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of physical impact, proof of 'serious emotional distress' causing physical injury or illness must be presented."  Barmettler v. Reno Air, Inc.,  114 Nev. 441, 448, 956 P.2d 1382, 1387 (1998).  "Insomnia and general physical or emotional discomfort are insufficient to satisfy the physical impact requirement."  Id.

Plaintiff Joan Oliva testified:

> Q.   Did you suffer emotional damages as a result of this -- the allegations in this   complaint?
> A.   I would say it was emotional.
> Q.   Did you seek treatment for those emotional damages?
> A.   I think I did back then.  It was a long time ago.
> Q.   Do you remember what type of symptoms you would suffer?
> A.   Well, again, it was just anxiety, you know, nervousness going to work, stomach churning.
> Q.   You may have sought treatment for that?
> A.   Uh-huh, yes.
> Q.   Would you be able to provide the doctor you sought treatment for?
> A.   If there was one, yes, absolutely.

(Deposition of Joan Oliva, p. 77:15-18 through p. 78:6.)

Joan Oliva's medical records make no reference to any emotional distress that was a result of this litigation or the interest rate adjusting on the Subject Loan.  (See, Joan Oliva's Medical Records, Bates stamped NCM00704-707, attached hereto as "K".)  The records reference an unrelated physical injury she suffered while at her former place of employment. Her treatment provider states:

> Joan Oliva is a 55 year old woman seeking therapy in order to cope with stress following a work injury….Ms. Oliva is reeling from the effects of falling on the job several months ago. The accident had something of a domino effect in that the results have impacted virtually every aspect of her life. …She enjoyed the job, plus she was able to live in one of [the owner's] apartments rent-free.

(Id. at NCM000705).

Ms. Oliva's provider also notes the stress Ms. Oliva is reporting due to the unrelated

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

litigation between Ms. Oliva and her former employer and losing her "rent-free" apartment:

> Ms. Oliva encountered considerable resistance from her employer regarding workman's comp and her apartment…She states that [the owner] has bragged to others that he has never lost a workman's comp case—he is an attorney.  Already the case has gone to court and the judgment was in her favor.  However, …the owner has appealed the result and the case continues to drag on.  … Since she is no longer working for [the owner], he insisted that she and her husband vacate their apartment.  Right now, they are living in the empty house of a friend.

(Id.) Despite the alleged emotional distress, Ms. Oliva's treatment provider concludes: "Ms. Oliva does not believe that she is depressed, and currently, I concur with this." (Id., at NCM000706.)

Ms. Oliva's alleged emotional distress is insufficient and unrelated to this matter.  Despite claiming emotional distress as a result of this instant litigation, Plaintiff Joan Oliva sought treatment only for the stress resulting from her unrelated physical injuries and her unrelated litigation between herself and a former employer.   Thus, Ms. Oliva has not set forth sufficient facts to support a damages claim in negligence based on her alleged emotional distress.  Barmettler, 956 P.2d, at 1387.

Plaintiff Nicholas Oliva's emotional distress is likewise insufficient to support damages.  Nicholas Oliva testified as to his emotional distress as follows:

> Q.    [Are you alleging any] emotional distress related to this loan transaction?
> A.    I'm extremely distressed now.  I'm very much in pain and anxiety because this thing has gone on for 16 months…

(Deposition of Nicholas Oliva, p. 102: 11-15.)  Mr. Oliva further testified:

> Q.    How would you describe your emotional distress?  You said anxiety.
> A.    My stomach is in a knot.  It's hard to sleep.  I'm in a constant state of depression.  I have suicidal tendencies.

(Id., at p. 103:13-17.)  Despite Mr. Oliva's alleged emotional distress, he has not sought any treatment.  (Id., at p. 103:10-12).

As a matter of law, Mr. Oliva has also failed to set forth "proof of 'serious emotional distress' causing physical injury or illness ..." Barmettler, 956 P.2d, at 1387. As such, he is not entitled to damages in negligence for his alleged emotional distress.  Id.

Furthermore, damages should be barred because Mr. Oliva's alleged suicidal tendencies could not have been proximately caused by Defendants. "Proximate cause is essentially a **policy consideration** that limits a defendant's liability to foreseeable consequences that have a **reasonably close connection** with both the defendant's conduct and the harm which that conduct created." Dow Chemical Co. v. Mahlum, 114 Nev. 1468, 1481, 970 P.2d 98, 107 (1998) (emphases added) (*disapproved on other grounds)*, GES, Inc. v. Corbitt, 117 Nev. 264, 265, 21 P.3d 11, 14 (2001). Consistent with Mahlum, the Wisconsin Supreme Court has specifically enumerated several public policy considerations which would militate against a finding of proximate cause:

> (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.

Miller v. Wal-Mart Stores, Inc., 219 Wis.2d 250, 264-65, 580 N.W.2d 233, 240 (1998).

Under each of the above mentioned cases, Mr. Oliva's alleged emotional distress is too far removed, and to extraordinary to sustain a damages claim. Allowing such tenuous claims to go forward places too much of a burden on any lender that offers adjustable rate loans, as there appears to be no end to the litany of potential claims which could be raised when interest rates on ARM loans adjust. Allowing such remote and extraordinary claims in this instance opens the door to potential unsubstantiated fraud claims where anything and everything wrong with potential plaintiff could be alleged to be caused by the alleged negligence of a lender or by any unexpected interest rate adjustment. The lack of proximate cause cuts off liability for such specious claims. Accordingly, Plaintiffs are not entitled to damages for alleged emotional distress.

### iii.   Plaintiffs' Negligence Claim Fails Because Their Alleged Damages are Barred by the Economic Loss Doctrine.

Plaintiffs only remaining alleged damages economic in nature. Thus, they are barred by the economic loss doctrine because, as discussed above, Plaintiffs have suffered no physical injuries. It is well established in Nevada, that there can be no recovery in tort for a purely economic loss. Local Joint Executive Bd. of Las Vegas, Culinary Workers Union, Local No. 226 v. Stern, 651 P.2d 637,

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

MOTION FOR SUMMARY JUDGMENT

638 (Nev.1982); Calloway v. City of Reno, 993 P.2d 1259, 1263 (Nev.2000); Olson v. Richard, 89 P.3d 31, 32 (Nev. 2004); Jordan v. State ex rel. Dept. of Motor Vehicles and Public Safety, 110 P.3d 30, 51 (Nev. 2005).  "The [economic loss] doctrine serves to… and clarify[y] that economic losses cannot be recovered under a tort theory." Calloway, 993 P.2d at 1264.

"The economic loss doctrine marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby [generally] encourages citizens to avoid causing physical harm to others." Terracon Consultants Western, Inc. v. Mandalay Resort Group, 206 P.3d 81, 86 (2009). "Instead, the economic loss doctrine cuts off tort liability when no personal injury or property damage occurred, with traditionally recognized exceptions for certain classes of claims." Id. at 90. No Nevada Court has created an exception for mortgage banking.  In fact, this Court recognizes that the economic loss doctrine applies in the "lender-borrower context." Velasquez v. HSBC Mort. Services, 2009 WL 2338852 (D.Nev. 2009)(Slip copy).

Therefore, under Terracon and its forebears, Plaintiffs cannot recover their alleged economic damages in negligence. Furthermore, Plaintiffs have presented no specific facts supported by competent evidence of their damages and Defendants are thus entitled to summary judgment in their favor. Celotex Corp., 477 U.S. at 324.

### C.      PLAINTIFFS ARE NOT ENTITLED TO PUNITIVE DAMAGES

At a minimum, Plaintiffs cannot recover punitive damages.  First, compensatory damages must be awarded before the court can award punitive damages. Sprouse v. Wentz, 105 Nev. 597, 781 P.2d 1136 (1989) (quoting, City of Reno v. Silver State Flying Serv., 84 Nev. 170, 180, 438 P.2d 257, 264 (1968). Additionally, if a punitive damage award is not based upon a cause of action sounding in tort, the award must be stricken on appeal.  Sprouse, 781 P.2d, at 1138.

Here, Plaintiffs claims are time-barred.  Furthermore, Plaintiffs have not proven their fraud claims by clear and convincing evidence, nor have Plaintiffs proven their negligence claims.  Having not proven their claims, Plaintiffs are not entitled to compensatory damages and accordingly, they are not entitled to punitive damages.   Sprouse, 781 P.2d at 1138.

Second, a Plaintiff is never entitled to punitive damages as a matter of right; rather, where the

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

district court has determined that the conduct at issue is, as a threshold matter, subject to civil punishment, the allowance or denial of exemplary or punitive damages rests entirely in the discretion of the trier of fact. <u>Evans v. Dean Witter Reynolds, Inc.</u>, 116 Nev. 598, 5 P.3d 1043 (2000).

Here, as discussed above, Plaintiffs cannot present *prima facie* fraud or tort claims against Defendants. Thus, Plaintiffs may not recover compensatory damages. Likewise Plaintiffs cannot recover punitive damages. <u>Sprouse</u>, 781 P.2d, at 1138.

## VI.     CONCLUSION

For the reasons set forth above, it is respectfully submitted that Plaintiffs have presented no genuine issues of material fact sufficient to avoid a summary judgment in favor of Defendants. Plaintiffs' fraud claim is barred by the statute of limitations. Plaintiffs' negligence claim is similarly barred by the statute of limitations. There is no genuine issue of material fact as to whether equitable tolling should apply because Plaintiffs admit they did nothing that would entitle them to invoke the doctrine of equitable tolling. Plaintiffs had actual knowledge of the terms of the Subject Loan for which they signed voluminous documentation, and despite their actual knowledge, they did nothing at all, allowing the statutes of limitations on their specious claims to expire. As such, Defendants are entitled to summary judgment, in their favor, as to the fraud and negligence claims.

DATED:     February 8, 2010                    WOLFE & WYMAN LLP

By: */s/ Peter E. Dunkley*
RACHEL E. DONN, ESQ.
Nevada Bar No. 10568
PETER E. DUNKLEY, ESQ.
Nevada Bar No. 11110
980 Kelly Johnson Drive, Suite 140
Las Vegas, NV 89119
Phone (702) 476-0100
Fax (702) 476-0101

Attorneys for Defendants
**NATIONAL CITY MORTGAGE COMPANY, MICHAEL DEMING, AND VIVIAN FURLOW**

\\wwlv\share\Matters\National City Bank (1264)\069 (Oliva)\Pleadings\Motion for Summary Judgment Federal Final.doc

20

**CERTIFICATE OF SERVICE**

1.     On February 8, 2010 I served the **MOTION FOR SUMMARY JUDGMENT** by the following means to the persons as listed below:

__X__     a.     EFC  System (you must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary):

Jason J. Bach, Esq. – e-mail – Jbach@bachlawfirm.com

2.     On _____ I served the _____by the following means to the persons as listed below:

____     b.     United States Mail, postage fully pre-paid (List persons and addresses.  Attach additional paper if necessary):

By: /s/ *Katia Ioffe*                        
        Katia Ioffe
        an employee of Wolfe & Wyman LLP

MOTION FOR SUMMARY JUDGMENT

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW